All right, we'll turn to the last case on the day calendar, which is J.S. v. New York State Department of Corrections and Community Supervision. Ms. Keegan. Thanks, Mr. Chairman. Ms. Keegan. Thanks for your patience. You held out. We're happy to see you. My pleasure, Your Honor. Thank you so much for the opportunity. Good afternoon. My name is Julie Michaels-Keegan, and I represent J.S. in this matter. May it please the Court. At the time that J.S. filed the underlying hearing to establish his right to a free appropriate public education, he was an adult with legal capacity. There was no dispute that he had a right to a hearing. There was no dispute that he is a prevailing party. And therefore, there really can be no basis to find that he is not entitled to attorney's fees. To reach the opposite conclusion, that adult students with legal capacity may not benefit from the IDEA's fee-shifting provision, flies in the face of the purpose of the IDEA, which is to enable students to receive a free appropriate public education. Can I ask a question? You're referring to him as adult students, and I think that term creates some confusion. Under the IDEA, they're children. Is that right? But under state law, they're adults with capacity. There's this three-year window in which somebody is a legal adult under state law, but under the IDEA, they're a child with disabilities. I agree with you that the IDEA uses the term child. I am, for the purposes of this presentation, using the word student because it's adult student because that is who JS was, an adult student. But his right to a free and appropriate public education was cast as one that he had as a child under the statute. Isn't that correct? The statute provides that, specifically says that parents of children with disabilities who are prevailing parties may recover attorney's fees. But what I meant is that the general, the baseline right derives from the free appropriate publication part of the IDEA, which is a FAPE, is available to all children with disabilities residing in the state between the ages of 3 and 21. So that's what I understood, same as Judge Robinson, that he was a child with a disability up to the age of 21 under the statute. That is correct, Your Honor. Yeah, I wasn't trying to question his maturity or something. From the perspective of the statute, it's one category of people. This is not some separate category of people under the statute that's called adult students. It's part of the same category. Exactly. Thank you. So that is why the Supreme Court very clearly said, instructed courts to read the terms parent and child interchangeably, because any other interpretation will have absurd results. Docs would have this court begin and end its inquiry with the literal meaning of the term parent. But that is not the analysis that is applied time and again by this court or the Supreme Court. The inquiry only starts with the terms of the provision. The court must then interpret the provision in light of the entire statutory scheme and Congress's intent, and also while avoiding an absurd result. JS is not asking this court to- Yes, Your Honor. There are two references specific to the attorney fee provision that go directly and mention students and include them along with parents in their reference to the attorney fee provision. So that's very specific there. And what I would also point out is there is nothing in any congressional history or legislative history where it shows Congress deliberately contemplated not including kids and didn't do it. So they've never even contemplated it. So they've mentioned it twice. They have never said, no, we can't let students recover fees if they're adults enforcing their own rights. How do you explain that a case like this should surface so late in the history of the IDEA statute? I mean, it seems like a more common situation. At first I thought it was unusual, my first question, but now I think maybe it's very usual. I think the case itself is uncommon because in many instances, let's face it, an 18 to 21-year-old will have a parent or someone working with them to advance their rights. But then there are individuals like J.S. who was in prison at the time, it was an adult prison serving an adult sentence, and he wanted his education. And it seems beyond belief that he would have to then reach out to a parent or have a surrogate appointed for him when he himself wanted to enforce his own rights. I'm interested that, I didn't see you arguing the principle of constitutional avoidance, but I'm wondering what your thoughts are about that. What would be the constitutional ramifications of the statute that basically provided fee shifting for people defined as children with disabilities under the statute who are minors, people who are defined as children with disabilities who are between the ages of 18 and 21 who are collaborating with a parent or under guardianship, but not those individuals who are acting in their own stead? Yes, Your Honor. That does seem like there is an equal protection issue there, and I think it was addressed by the amici in their brief. And we would support that. But it is so clear under Winkleman, as well as the attorney fee statute itself, that adults, adult children, who can have the legal capacity to enforce their own rights, should be able to do so. And so it's helpful that you're talking about how clear it is, because it strikes me that that's a segue into the second issue here, which is the spending clause issue. Doesn't your argument, to some extent, rely on the notion that the statute is ambiguous, and therefore we have to invoke extra textual considerations? And if that is the analytical framework, doesn't that put us in a spending clause bind? No, and no, and no. Okay. First, I don't feel we're in a spending clause bind, because the statute itself says we pay fees to prevailing parties. Period. So whether JS- I'm sorry, doesn't it say to a prevailing party who is the parent of a child with a disability? Yes, Your Honor. To a prevailing party who is the parent of a child with a disability. And that it defines parent, and that's part of what we're talking about here, because it doesn't say just biological parent. It offers different persons who have responsibilities, or undertake responsibilities on their own, for pursuing the rights that the statute gives. That's correct, Your Honor. It includes anybody legally responsible for the child's welfare, and clearly, in this case, JS was responsible for his own welfare. No one else was. So getting back to your concern, so if a prevailing party of a student with a disability is dependent on the student's right, and so there are a fixed number of students in New York State, and if they pursue their rights, they are entitled to fees. And so I don't think it comes into any conflict with the spending clause, because it is a fixed number of students. It's not really who brings their rights. Well, but it's, I mean, you could see an argument that the statute read the way that it wants to read it. It says that the universe of people who are entitled to that fee shifting is slightly smaller than the universe of people that you're advocating for. There is a component of children with disabilities who, if they're prevailing parties, don't actually get the benefit of that, and that is in particular those who aren't represented by an individual, a parent or an individual acting sort of in loco parentis. That is correct. Interestingly, in Winkleman, the Supreme Court also dealt with the spending clause. And in that case, as I'm sure you know, the Supreme Court expanded all of the rights of children, extended all of the rights to children to parents, and said that still didn't have an impact on the spending clause. It didn't add any new obligations, and it didn't add any new liabilities. There wasn't a new fee shifting provision or something that came along. I'm just wondering whether this is a step beyond that. I don't think it is a step beyond, Your Honor, because we're talking about individuals who are entitled to a free, appropriate public education. And to think that New York State, when contemplating whether to ask or whether to accept funds under the IDEA, said, well, as long as those adult students can't bring a hearing and prevail on their rights, we're not going to go with the IDEA. Even though we might all agree that it doesn't make sense to excise the small class of students who are between 18 and 21 and pursuing their rights on their own under the statute, can't you agree, or don't you have to agree, that just looking at the language to a prevailing party who is the parent of a child with a disability, if there weren't a separate section defining parent, it's hard to find ambiguity there. We know what parents are. Then we have to look at the definition of parent. In the ordinary course, one typically wouldn't, I don't think, refer to oneself as an individual who is legally responsible for the child's welfare, where one is the child. It's not an obvious textual argument, even though we might all agree that the purposes of the statute would be ill-served and there was no basis for looking. Congress gave no sign that it was trying to disadvantage this cluster of people who would qualify for a FAPE and who are between ages 18 and 21. But don't you agree that the text is not quite so clear as you're making out? I do agree with you to the extent that I think there are many instances in the IDEA where Congress was really focused on kids who were minors, because for the 15 years that you're eligible for services, from birth 3, age 3, it's actually birth to age 18, it's parents that have to enforce your rights. You don't have the right as a minor to go into court and enforce your rights. And so I do think a lot of times those terms parents and child had that group of people in mind. But what I do know is that by expanding the definition of parent, beyond its typical interpretation, that we are certainly, the gist of what they were looking for was they wanted to make sure that someone who had legal authority was acting on behalf of that student. And there is nothing in the legislative history or elsewhere that would say that they wouldn't have that authority. So your response to Judge Carney, I take it, may be that we don't have to rely on a definition of parent. Is that right? Is that your position? My position is... Or do we have to reach that question and say, parents include children? I don't think you have to reach that question because I think the Supreme Court already did in Winkleman. Yes, tell us about Winkleman. Sure. So Winkleman was based on parents who were basically claiming they had their own rights under the IDEA. And in fact, they didn't have their own legally enforceable rights. They were very limited. They were limited to procedural things, such as attorney's fees. And so in Winkleman, the court said, we can't limit parents' rights that way. Parents certainly have the right to a fate, even, through their kid, through their child, on behalf of their child. And so when we look at these provisions throughout, we see references to children, we see references to parents, and that the only way to reconcile the differences there was to read them interchangeably. And it wasn't just parents get all the rights that children have. It was and vice versa. Children also have the rights that parents have. And then they used the attorney fee provision itself as an indicator of the absurd result that would occur if we were not to include the term, not include children in the attorney, not interpret children as parents. Interpreting parents and vice versa. Yes. Could I clarify one thing? I mean, I thought that you were, in fact, relying on the statutory definition of parent, which includes the phrase, an individual who is legally responsible for the child's welfare, and that that clause, as well as the rest of the definition of parent, to include an individual acting in the place of a parent and an individual, a guardian, and a foster parent, and so on, to evince an expansive intent on Congress's part that would literally read, even though it wouldn't be maybe the most natural reading, but it still could be read to include a child acting on his or her own behalf, to enforce the rights under the statute. That's exactly right, Your Honor. Okay. First and foremost, I think Winkleman gives the guidance that's needed. You need to read these terms interchangeably, and you can even do that in the attorney fee provision. Second, the attorney fee provision, by looking at the definition of parent, which we must, if we're looking at what the meaning of the term is, definitely includes an individual, like J.S., who was of age of legal majority and able to enforce his own rights. We have to think about the consequence, also, of not allowing J.S. or other adults to enforce their rights, or at least recover fees. Recovering fees allows individuals, it levels the playing field, right, for people who want to enforce their rights. This Court and the Supreme Court have been very clear that any fee-shifting statute, is there to ensure that people can vindicate their rights who would not otherwise afford to be able to. That's certainly the case with J.S. Thanks very much. Thank you. You have reserved some time. You have 15 minutes, eventually. Good afternoon, Your Honors. Kevin Hu, on behalf of DOCS. So, I would actually like to begin with Winkleman, because I think a proper understanding of that case really helps us, would assist the Court and the parties in determining where to begin this analysis. So, as a threshold matter, Winkleman is not binding on this Court, because it was not considering a party's entitlement to attorney's fees. You're speaking of Winkleman. Winkleman, yes, Judge Kavanos. And so, to the extent that it may have cited the attorney's fees provision in conducting its analysis, at most, it can be persuasive. But ultimately... At some point, there's such a thing as good dicta and bad dicta, right? That is true, Your Honor. And to the extent it's bad dicta, there are two contextual elements of Winkleman that really undermine that dicta's value. And so, the first is the statutory interpretation posture. So, in Winkleman, there was no statutory provision on point that addressed whether parents have substantive rights in the FAPE. And so, that's why the Court resorted to the interlocking provisions, the statutory history and general policy concerns, to sort of divine whether the statute as a whole, sub silencio, would prohibit parents from asserting that substantive right. And so, here, we have sort of the opposite. There is a statutory provision that expressly excludes people, adult children... Wait a minute. It doesn't expressly exclude adult children. It includes an individual who's legally responsible for the child's welfare. Is J.S. not legally responsible for his own welfare? As a practical matter, that may be true, Your Honor. But in terms of the statutory language, that would be an unreasonable interpretation of the statute. It would be unreasonable in a world where child and adult meant the same thing in the statute and the state law. But once you sort of reckon with the fact that he is an adult outside of the context of this statute, but in the statute he's a child, doesn't it make total sense that he falls within the catch-all of an individual who's legally responsible for the child's welfare? Your Honor, I would respectfully suggest that both the fee-shifting provision and the statutory definition of a parent evince congressional intent that a parent and child would not be the same person. What do you point to to suggest that Congress actually considered this and excluded the children between 18 and 21 who were prosecuting their rights to have a FAPE in that 3-year span when they were adults under state law but a child under federal law? Is there anything in the legislative record or any place in the statute that suggests Congress actually considered this and rejected the notion that they could recover their fees if they prevailed in asserting their rights? There's nothing in the legislative history that necessarily suggests Congress intended to exclude these individuals. But by choosing the plain language that they did... They used the word parent in 1415 I3B1, but then for the definition of parent, they have an expansive definition that includes people who are not parents. That's right, Your Honor. I agree with you that the third definition of parent, which is subsection C, includes a broad functional definition of parent that is certainly expansive. But the key characteristic... Just to point out, an individual acting in the place of a parent with whom the child lives could be a neighbor. It could be someone with no legal status. That's right, Your Honor, but the key characteristic is a certain type of relationship with the child. That is what brings you within the ambit of subsection C. Legal responsibility. For example, the first subsection says an individual acting in the place of a natural or adopted parent with whom the child lives. So there, it's that individual's voluntary assumption of a parental role in conjunction with residence. What does that mean in the context of somebody who's a legal adult for purposes of everything but the IDEA? How would you have a parental role for somebody over 18 as a legal matter? Your Honor, that would be a sort of contextual analysis that would really depend on the relationship between the individual that claims he would satisfy that definition and the putative student. It could perhaps be shown by the degree of care in which that individual is providing for the student, or it could be... It seems like you're moving... If we're trying to do a textual analysis here, it seems like what you're describing is something much more evidentiary and mushy and fact-based. Let me backtrack for a moment, Your Honor. So regardless of what would satisfy that definition, by choosing to define... choosing to define this category of parental individuals based on a relationship with the child, that presupposes that individual and the child will not be the same person. Does your argument imply that if a child is between 18 and 21, that they've also lost their rights to due process administrative hearings and to administratively appeal the results of hearings and to bring a suit like this? It would not, Your Honor, for two reasons. And so the first is that, notwithstanding the Supreme Court's comment... the Supreme Court's dicta in Winkleman that there should be no difference between substantive and procedural rights, there is... there is... there is a potential that those rights should be treated differently. Because the Supreme Court was never presented with a procedural right, a reimbursement-related right, to which special doctrines may apply. Even if Winkleman doesn't control here, there's language in Winkleman that suggests, you know, it goes in different directions. It does still reflect an approach to looking for a statute that makes sense and that wants to... that achieves the congressionally stated goals, which have been well developed over the past 20-plus years. And I'm having difficulty understanding how it's consistent with that approach and with the broad language that Congress adopted here for the definition of parent to take as narrow and kind of cramped reading as you're proposing here. Your Honor, let me first try to answer your question in a different way regarding the due process... the ability to seek due process hearing. So that right is fundamentally intertwined with the substantive right to a fate. And so interpreting parent in a narrow... interpreting the word parent in a narrow sense in that context would certainly lead to an absurd result. It would result in the parent... Why is that the same here, where to vindicate the rights, he would have the same rights as his parent would have if the parent had brought the suit? I mean, that's as intimately intertwined with obtaining his rights, isn't it, as pursuing a due process administrative hearing? Your Honor, I would respectfully suggest that the right to reimbursement is only tangentially related to the substantive right in the sense that it is undisputed that he has the power... that an adult age child has the power to initiate proceedings to challenge the denial of a fate. But the reimbursement of attorney's fees for better or worse in our legal system is a privilege under the American rule... But the American rule has no purchase here. I mean, Congress made the choice that attorney's fees that were incurred by parents in pursuing their child's rights were reimbursable. And it seems to me that to jump from that back to the American rule ignores the whole structure and thrust of this statute. Aren't they really in conflict? Why do we go back to the American rule in this context? Your Honor, the reason the American rule applies here is because of, quite frankly, spending clause principles. Under Arlington Central School District, the Supreme Court made clear that when a statute is expanding liability on the states, the states must have clear and unambiguous notice of the terms in which they are accepting federal funding. As Judge Robinson pointed out earlier, though the liability, the obligations of the state are the same, the only thing that is different is potentially whether the state has to pay legal fees if it has breached its obligations. Judge Carney, I believe Judge Robinson's comment about the legal obligation being the same was regards to the substantive right that was at issue in Winkleman, which is to say that a student has a substantive right to a fate, but the expansion there was saying that a parent also has an independent right to assert that in court. So ultimately, there was no new liability because states are required to provide a fate, but it's just a question of who can vindicate that right in court. And so here, the right at issue is one of reimbursement. It's fundamentally one of financial obligations. Are you suggesting also that the state would not have signed on to participating in the IDEA had it known that for the class of adult child, children between 18 and 21, it might have to pay legal fees if it was shown to have breached its obligations to that small body? I'm not necessarily suggesting that the state of New York would have made a different decision, but the standard under spending clause jurisprudence is whether they had clear notice, not necessarily whether the substantive decision to participate or not would have been different. So what's the congressional interest that's furthered by a statute that awards attorneys fees to 95%, I don't know what the numbers are, of the people who pursue these claims, but not to this subset of children with disabilities who actually have the legal capacity and capability of pursuing their own claims? Judge Robinson, that outcome is not necessarily absurd, because Congress could have rationally concluded that because this subset of individuals is so small, and Plaintiff actually concedes in his reply brief that the number of adult children who will seek attorney's fees is small, Congress could have rationally assumed that the cost of vindicating these rights could have been adequately borne by public interest organizations, public advocacy organizations, many of whom are publicly funded. And so, what Congress has done here, by excluding these adult aged children, is actually put them in a neutral position. Yes, it may be true that they are unable to recover attorney's fees when they are a prevailing party, but if I could redirect the panel's attention to the third category of an award of attorney's fees, which is to a prevailing state educational agency or local educational agency, which actually provides for an award against a child who, as asserted, is frivolous or intended to harass. So, while an adult aged child may not be able to recoup attorney's fees, he or she will certainly not face any liability as well. So in that sense, with respect to attorney's fees, they are certainly in a neutral position. Thank you. I only have one point to make, and that is the purpose of the fee provision, as it is in the IDEA and any other civil rights statute, is twofold. The first is to level the playing field, but also to deter bad behavior and noncompliance by the state authorities. And in this case, J.S. was deprived of an education for three years, and he was in a situation, in prison, when he could have benefited from getting an education, and yet he got away with it. He got nothing. And then, no objection from DOCS, and then, finally, we get to attorney's fees, and there's an objection all of a sudden. And if we were to deny him those attorney fees, then he that DOCS has really suffered no harm, no punitive... So how would you characterize the state's posture on the merits? It just surrendered, did it? No. There was a two-day hearing, Your Honor, and it was involved. In fact, it was the first administrative due process hearing that was ever brought against DOCS, so it was a new experience for everyone. But, nevertheless, JS had the courage to do it, and he should have had the right to do it, and he should receive attorney fees because he prevailed. Thank you very much. We'll reserve decision, and we're adjourned. Court is adjourned. Court is adjourned.